| | |
|---|---|
| HENRY PASHBY, ANNIE BAXLEY, MARGARET DREW, DEBORAH FORD, MELISSA GABIJAN, by her guardian and next friend JAMIE GABIJAN, MICHEAL HUTTER, JAMES MOORE, LUCRETIA MOORE, ALYEAH PHILLIPS, ALICE SHROPSHIRE, SANDY SPLAWN, ROBERT JONES, and REBECCA PETTIGREW, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LANIER CANSLER, in his official capacity as Secretary of the North Carolina Department of Health and Human Services,<br><br>Defendant. | **ORDER** |

This matter is before the Court on Plaintiffs' Motion to Certify Class and Motion for Preliminary Injunction. A hearing was held on these matters before the undersigned on November 17, 2011, at Raleigh, North Carolina. For the reasons discussed below, Plaintiffs' Motions to Certify Class and for Preliminary Injunction are granted.

## BACKGROUND

Plaintiffs filed this action on May 31, 2011, challenging the legality of Defendant's new rule regarding the provision of Medicaid-covered Personal Care Services for adults over twenty-one years of age. The new rule went into effect on June 1, 2011. Plaintiffs seek a preliminary injunction that would enjoin Defendant from implementing this rule, specifically the provisions of the In Home Care for Adults Clinical Policy 3E (Policy 3E) that would terminate eligibility for

in-home care for Medicaid recipients that were eligible for such care prior to the implementation of Policy 3E. Plaintiffs challenge the legality of Policy 3E, alleging that it violates the comparability requirement of the Medicaid Act, 42 U.S.C. § 1396a(a)(10)(B); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12312; section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the due process clause.

## Medicaid

Medicaid is a cooperative program between the federal government and the states that seeks to enable each state to "furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self care." 42 U.S.C. § 1396-1. Participation by the states in the Medicaid program is voluntary, and all participating states must comply with federally mandated standards. 42 U.S.C. § 1396(a); *Antrican v. Odom*, 290 F.3d 178, 183 n.2 (4th Cir. 2002). North Carolina has chosen to participate in the Medicaid program, and North Carolina's Medicaid program is administered by Defendant. N.C. Gen. Stat. 108A-56; 108A-54.

## Personal Care Services

Medicaid-participating states are required to include some types of benefits in their Medicaid plans and may elect to include other, optional benefits. Personal care services (PCS) are an optional benefit that provide for assistance with activities of daily living, including toileting, dressing, bathing, and eating. North Carolina has elected to provide coverage for PCS for qualifying Medicaid recipients. Prior to the implementation of Policy 3E, PCS were provided to individuals who, after referral by a physician and assessment by an independent entity, were

2

determined to need assistance with at least two of the following qualifying activities of daily living (ADLs): bathing, dressing, toileting, mobility, and eating. If qualified, a recipient could receive no more than eighty hours of PCS per month or no more than 3.5 hours of PCS per day. *See* DMA Clinical Coverage Policy No. 3C, 2010 version.

Pursuant to Session Law 2010-31, Defendant revised its plan for providing PCS to eligible recipients and created two new services: In-Home Care for Adults (IHCA) and In-Home Care for Children (IHCC). Defendant developed an amended plan for providing in-home PCS under the IHCA, about which it solicited comment pursuant to N.C. Gen. Stat. 108A-54.2, and which it submitted to the Center for Medicaid and Medicare (CMS), the federal agency responsible for Medicaid, for approval. CMS approved the amended plan on April 18, 2011, and made the plan effective as of June 1, 2011. IHCA Policy 3E, developed as part of the implementation process for the new plan, details the eligibility and coverage criteria for in-home PCS which were specified by the North Carolina state legislature. N.C. Session Law 2010-31, Section 10.35. Specifically, N.C. Session Law 2010-31 and Policy 3E provide that in-home PCS will be provided to qualifying adults who need limited assistance with three qualifying ADLs or extensive assistance with two ADLs. A recipient's treating physician must attest that PCS are medically necessary, the need for in-home PCS must be directly linked to a documented medical condition, and the recipient must approved by a designee of the Division of Medical Assistance (DMA), currently Carolinas Center for Medical Excellence (CCME), before he will be deemed eligible for in-home PCS under IHCA.

PCS are also provided to Medicaid recipients who reside in institutional settings or adult care homes (ACHs). A person residing in an ACH may receive PCS associated with bathing,

dressing, personal hygiene, ambulation or locomotion, tranferring, toileting, and eating. There is no prior approval process by a designee of the DMA required for an ACH resident to receive PCS, but a physician must certify that the resident has a medical condition with associated mental or physical limitations. All residents who receive Special Assistance funding from the State of North Carolina, which requires certification by a physician of the need for care in an adult home, are automatically eligible for Medicaid and associated ACH PCS.

## I. Motion to Certify Class

Rule 23 provides the requirements that plaintiffs must satisfy in order be permitted to represent a class. Fed. R. Civ. Pro. 23(a). First, a plaintiff must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Id.* Additionally, plaintiffs seeking class certification must also satisfy one of the requirements of Rule 23(b). Plaintiffs bear the burden of proving the requirements of Rule 23, *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006) (internal citations omitted), and only one named Plaintiff must have standing with respect to each claim. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977).

Here, Plaintiffs contend they have satisfied both the requirements of Rule 23(a) and Rule 23(b)(2), which provides that class certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole." Fed. R. Civ. P. 23(b)(2). The putative class has been defined by Plaintiffs as "all current or future North Carolina Medicaid recipients age 21 or older who have, or will have, coverage of PCS denied, delayed, interrupted, terminated, or reduced by Defendant directly or through his agents or assigns as a result of the new eligibility requirements for in-home PCS and unlawful policies contained in ICHA Policy 3E" [DE 26 p. 2-3].

At the outset, Defendant challenges whether the named Plaintiffs have standing to bring this action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Because standing is a jurisdictional requirement, the Court will first address this threshold issue.

## Standing

Standing is the determination of whether a particular individual is the proper party to assert a claim in federal court; it "is founded in concern about the proper–and properly *limited* role–of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (emphasis added). The standing doctrine curtails the types of disputes that an Article III court can decide; it does so by requiring courts to hew to their express constitutional mandate of resolving "cases" and "controversies." U.S. Const. art. III, §2, cl. 1; *Warth*, 422 U.S. at 498. The standing question is one that asks " whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. An affirmative answer to this question requires a plaintiff to demonstrate at least three "irreducible constitutional minimum" requirements:

> First, the plaintiff must have suffered an "injury in fact"- an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

Standing is determined at the commencement of suit. *Id.* at 570 n.5. Because each Plaintiff faced, at the time this lawsuit commenced, the termination of his or her in-home PCS due to the change in requirements that was to be implemented on June 1, 2011, each Plaintiff had standing to challenge the implementation of Policy 3E. Specifically, each of the named Plaintiffs suffered an imminent injury in fact – the termination of in-home PCS – that was to be the result of the actions of Defendant, the harm from which would likely be redressable by a favorable decision by the Court.[1]

Defendant does not challenge, however, whether the named Plaintiffs had standing at the commencement of this suit, but appears rather to be contending that the claims of some of the named Plaintiffs are, in light of subsequent actions by Plaintiffs and Defendants, now moot. It is uncontested that some of the named Plaintiffs timely appealed the termination of in-home PCS due to the implementation of Policy 3E and are now, after mediation with Defendant, receiving in-home PCS. Mootness does not result, however, from a defendant's voluntary cessation of allegedly illegal conduct. *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953); *see also City of Mequite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Moreover, in agreeing to continue coverage for in-home PCS for several of the Plaintiffs, Defendant has made no assertion as to the legality of Policy 3E or contended that it will no longer apply such policy to Plaintiffs or

---

[1] Named Plaintiffs in this action are afflicted with a wide variety of health impairments, including cancer, incontinence, traumatic brain injury, early-stage dementia, cerebral palsy, diabetes, sarcoidosis, emphysema, COPD, arthritis, bipolar disorder, HIV/AIDS, and multiple sclerosis. Each Plaintiff has filed a declaration stating that their ability to live on their own in the community is due to the in-home PCS that they had received, and that without in-home PCS they might be forced to move to an institutional setting.

6

any other formerly eligible in-home PCS recipient. In reality, Defendant has only agreed to continue to provide coverage for in-home PCS for at least one of the named Plaintiffs until the earlier of December 30, 2011, or said Plaintiff's next assessment [DE 55-1]. Accordingly, because these named Plaintiffs continue to face termination of their in-home PCS, their claims are not moot and Defendant's argument as such must fail.[2] *See Doe v. Kidd*, 501 F.3d 348, 354 (4th Cir. 2007); *Peter B. v. Sanford*, No. 6:10-CV-00767, 2011 WL 824584 at *1 (D.S.C. March 7, 2011) (recognizing that while Plaintiffs' "services have been temporarily stayed at the discretion of Defendants, their ability to seek redress and a more stable resolution through the court remains independent of the vagaries of Defendants").

Next, Defendant contends that the claims of some of the named Plaintiffs are not ripe for review because those Plaintiffs have filed administrative appeals that have not yet been resolved. The doctrine of ripeness is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies . . . ." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Specifically, Defendant contends that in order for a claim to be ripe there must be "an administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties." *Charter Federal Sav. Bank v. Office of*

---

[2]Plaintiffs are correct to contend that Defendant's reliance on the Fourth Circuit's decision in *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88 (2011), is inapposite. In *Rhodes*, the Fourth Circuit held that a Plaintiff's Rule 41 stipulation of dismissal of claims before the district court resulted in the Circuit Court's lack of jurisdiction to consider those claims on appeal. Specifically, the Court of Appeals found that when a putative class member voluntarily dismissed claims upon which class certification might be based, that Plaintiff no longer had standing to appeal the district court's denial of class certification. The holding in *Rhodes* is therefore uninstructive here.

*Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992) (citing *Abbott*, 387 U.S. at 148-49). The formal administrative decision that has been challenged here is Defendant's implementation of Policy 3E; Plaintiffs need not wait until the resolution of their administrative appeals under the new policy to challenge legality of it.

Defendant also argues that Plaintiffs lack standing to challenge Defendant's notice of termination of in-home PCS as violative of the due process clause because they each filed timely appeals. The fact that Plaintiffs timely appealed their termination is not, however, determinative of whether or not Defendant's notice comports with due process. Plaintiffs here challenge the adequacy of notice; the Court will not assume that because the Plaintiffs were able, perhaps with assistance, to appeal their termination that Defendant's notice complies with the requirements of procedural due process. As to each of the named Plaintiffs who received Defendant's notice, the Court finds that those Plaintiffs have standing to challenge the adequacy of the notice received.

### Rule 23

Having determined that the named Plaintiffs have standing to bring this suit, the Court now considers whether Plaintiffs have satisfied their burden under Federal Rule of Civil Procedure 23. As discussed above, the "requirements of Rule 23(a) are familiar: numerosity of parties, commonality of factual or legal issues, typicality of claims and defenses of class representatives, and adequacy of representation." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006). The district court has "wide discretion in deciding whether or not to certify a proposed class." *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (internal citations omitted).

*Numerosity*

There is no specified or minimum number of plaintiffs needed to maintain a class action, and the Court finds that Plaintiffs have shown that there currently exist approximately 2,405 putative class members who had their in-home PCS terminated on June 1, 2011, as a result of the implementation of Policy 3E. Additionally, Plaintiffs have included in their putative class future Medicaid recipients who will be affected under Policy 3E, and have shown that joinder of plaintiffs would be difficult due their disbursement throughout the state. "Moreover, the fluid composition of the [Medicaid recipient] population is particularly well suited for status as a class because while the identity of the individuals involved may change, the nature of the harm and the basic parameters of the group affected remain constant." *Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986). Accordingly, the Court finds that Plaintiffs have satisfied the numerosity requirement.

*Commonality, Typicality, and Adequacy of Representation*

"[T]he final three requirements of Rule 23(a) tend to merge, with commonality and typicality serving as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 147 (4th Cir. 2001) (internal quotations and citations omitted). Rule 23(a)(2) does not require that all factual or legal questions raised be common, so long as there is at least one common question of law or fact. *See Brown v. Eckerd Drugs, Inc.*, 663 F.2d 1268, 1275 (4th Cir. 1981). However, Plaintiffs must show that "[t]hat common contention . . . [is] of such a nature that it is capable of classwide resolution – which

9

means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S.Ct. 2541, 2551 (2011). Here, Plaintiffs have sufficiently alleged commonality of their claims. A determination that Policy 3E is valid or invalid on its face will resolve the claims of all potential plaintiffs, irrespective of their particular factual circumstances. Additionally, a determination that Defendant did or did not comport with due process will affect all putative class members in the same manner, again irrespective of their particular factual circumstances.

Plaintiffs have also satisfied the Rule 23(a)(3) typicality requirement, which requires that the claims and defenses of the class representative be typical of the claims of other class members. To satisfy the typicality requirement, the representative must demonstrate that his claims arise from the same practices and are based in the same theory of law as the claims of the class. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998). Here, "as go[] the claim[s] of the named plaintiff[s], so go the claims of the class." *Id.* (internal citation omitted). All of the named Plaintiffs' claims arise from the same legal theory and the same factual circumstances as those of the class.

The Court also finds that Plaintiffs have satisfied the final requirement of Rule 23(a) by showing that they can adequately and fairly protect the interests of the class. Fed. R. Civ. Pro. 23(a)(4). Defendant had not questioned that Plaintiffs are represented by adequate counsel who are experienced litigators with prior exposure to class action suits, and Plaintiffs have shown that they do not have any interests that are antagonistic to the class.[3] *Barnett v. W.T. Grant Co.*, 518

---

[3]Defendant contends that the named Plaintiffs may not adequately represent the class as to their due process claim because each of the named Plaintiffs has appealed the termination of their in-home PCS. However, as discussed above, typicality does not require that each Plaintiff have

F.2d 543, 546 (4th Cir. 1975). Accordingly, the Court finds that Plaintiffs have satisfied all of the requirements of Rule 23(a).

*Rule 23(b)(2)*

Plaintiffs have satisfied their burden under Fed. R. Civ. P. 23(b)(2). Defendant has not argued that Plaintiffs have not satisfied this provision, and the Court recognizes that the declaratory and injunctive relief sought in this action is of the type contemplated by Rule 23(b)(2). *See e.g. Duggan v. Bowen*, 691 F. Supp 1487 (D.D.C. 1988); 7 William Rubenstein et al, NEWBERG ON CLASS ACTIONS § 23:11 (4th ed.).

Accordingly, as Plaintiffs have satisfied each of the requirements of Rule 23, the Court, in its discretion, hereby grants Plaintiffs' Motion to Certify Class.

## II. Preliminary Injunction

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Green*, 533 U.S. 674 (2008). A movant must establish each of four elements before a preliminary injunction may issue: 1) he is likely to succeed on the merits, 2) he is likely to suffer irreparable harm in the absence of preliminary relief, 3) the balance of equities tips in his favor, and 4) an injunction is in the public interest. *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008). Prior to the decision in *Winter*, the Fourth Circuit applied a "hardship balancing test" for preliminary injunctions under which a movant was not required to show likelihood of success, but only a possibility of success. *Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977). Since the Supreme Court's decision in *Winter*, however, the Fourth Circuit has acknowledged that the balance-of-hardship test no longer applies, and "the standard

an identical factual circumstance.

11

articulated in *Winter* governs the issuance of preliminary injunctions." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009). Applying the standard announced in *Winters*, the Court finds that Plaintiffs have established that they are entitled to a preliminary injunction.

*Likelihood of Success*

Plaintiffs have demonstrated a likelihood of success on the merits. The Medicaid Act requires that comparable medical assistance be provided to individuals with comparable needs. 42 U.S.C. § 1396A(a)(10)(B). The comparability requirement is "violated when some recipients are treated differently than others where each has the same level of need." *V.L. v. Wagner*, 669 F. Supp.2d 1106, 1114-15 (N.D.Cal. 2009). Plaintiffs have offered sufficient evidence to show that Policy 3E violates Medicaid's comparability requirement insofar as it permits PCS for Medicaid recipients living in adult care homes with far less strict eligibility requirements than the eligibility requirements for in-home PCS under the IHCA program. Although CMS approved Policy 3E, it did so while simultaneously approving stricter criteria for ACH PCS. Plaintiff has offered evidence that none of the ACH PCS changes approved by CMS have been implemented, and Defendant has failed to offer evidence to the contrary, instead relying solely on CMS's approval of Policy 3E to refute Plaintiffs' comparability violation claim. Irrespective of the plan approved by CMS, Plaintiffs have made a showing that, as currently implemented, Defendant has violated Medicaid's comparability requirement by treating differently recipients with similar levels of need.[4] Accordingly, Plaintiffs have shown a likelihood of success on their Medicaid

---

[4] It is important to note that CMS had several times notified Defendant that its policy of ACH PCS was not comparable to the in-home PCS services it provided, most recently by letter dated January 20, 2011.

12

comparability requirement claim.

Plaintiffs have also shown a likelihood of success on their ADA and Rehabilitation Act claims. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such an entity." 42 U.S.C. § 12132. Discrimination prohibited under the ADA includes "unnecessary segregation" and "unjustified institutional isolation of personal disabilities." *Olmstead v. L.C.*, 527 U.S. 581, 600-02 (1999). A state is required to provide community-based services for persons with disabilities deemed eligible based on the reasonable assessments of the state's professionals. *Id.* at 602. In accordance with the goals of the ADA and the Rehabilitation Act, the state shall provide services in the most integrated setting possible. *See Olmstead*, 527 U.S. at 591-92. The state must make reasonable modifications to comply, but are exempted from this responsibility when it would require "fundamental alteration" of the state's services or programs. *Id.*

Plaintiffs have shown that they are qualified individuals under the ADA who have been successfully living in their own homes and who are now at risk of segregation, in the form of institutionalization, as a result of Defendant's implementation of Policy 3E. Plaintiffs need not await segregation before challenging the Policy as a violation of the ADA's integration mandate, and Plaintiffs have submitted sufficient evidence to show that they are at risk of segregation without in-home PCS. *See Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1184 (10th Cir. 2003). The record in this case does not indicate that Defendant will have to make a fundamental alteration of the IHCA program in order to comply with the ADA's integration mandate.

13

Accordingly, Plaintiffs have shown a likelihood of success on their ADA and Rehabilitation Act claims.

Finally, Plaintiffs have shown a likelihood of success on their due process claim. Before terminating Medicaid services, a state must comply with procedural due process by providing recipients of that service with "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970). Defendant's notice to all Plaintiffs contained verbatim language that failed to provide detailed reasons for the proposed termination. As the termination of in-home PCS could be quantified as a "brutal need," Defendant is likely required to go to greater lengths to provide more detailed notice regarding the reasons for the termination of an individual's benefits. *Id.* at 261; *see also Schroeder v. Hegstrom*, 590 F.Supp. 121, 128 (D.Or. 1984) (discussing the balancing of the interest in ensuring that benefits are not terminated unjustly and the burden of providing more detailed notice).

*Irreparable Harm*

Plaintiffs have demonstrated that they will suffer irreparable harm. In the absence of an injunction, Plaintiffs risk either re-evaluation and termination of their in-home PCS or a continuing lack of in-home PCS. Lack of in-home PCS could result in either serious physical or mental injury or forced entry into institutional settings for many of the named Plaintiffs and members of the class; such injuries certainly constitute irreparable harm. *See e.g. Mayer v. Wing*, 922 F.Supp. 902, 909 (S.D.N.Y. 1996); *Crabtree v. Goetz*, No. 3:08-0930, 2008 WL 5330506 at *30 (M.D.Tenn. December 19, 2008).

*Balance of Equities & Public Interest*

Finally, Plaintiffs have also shown that the balance of equities tips in their favor and that the public interest supports the issuance of an injunction. While Defendant cites to reductions in available funds for Medicaid services, such fiscal concerns cannot be held to outweigh harm to Plaintiffs' safety and well-being. *See Todd v. Sorrell*, 841F.2d 87, 88 (4th Cir. 1988) (finding that harm measured only in money was inconsequential when compared to harm to plaintiff's health and life). An injunction will require only that Defendant continue to provide for in-home PCS for those Plaintiffs who were found to be entitled to such benefits prior to June 1, 2011; Defendant is already providing in-home PCS to many of those former recipients pending their appeals. Additionally, the public interest always lies with upholding the law and having the mandates of the Medicare Act, the ADA, the Rehabilitation Act, and due process enforced. As Plaintiffs have shown a likelihood of success on the merits as to these claims, the Court finds that an injunction in this case is in the best interest of the public as well as of the Plaintiffs.

## **CONCLUSION**

Accordingly, for the reasons discussed above, Plaintiffs' Motion to Certify Class is GRANTED. The relevant class is defined as all current or future North Carolina Medicaid recipients age 21 or older who have, or will have, coverage of PCS denied, delayed, interrupted, terminated, or reduced by Defendant directly or through his agents or assigns as a result of the new eligibility requirements for in-home PCS and unlawful policies contained in ICHA Policy 3E. Counsel for named Plaintiffs is hereby directed to notify the class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Plaintiffs' Motion for Preliminary Injunction is also GRANTED. Defendant is hereby

15

prohibited from implementing IHCA Policy 3E. Additionally, for good cause shown, Plaintiffs' Motion for Leave to File Declarations [DE 80] is also GRANTED.

SO ORDERED, this __7__ day of December, 2011.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE